Mr. Andrews, good morning. Good morning Judge Tawiyah, Judge Thompson, Judge Lynch. I'm here because I represent Christopher Wright. When the district court chose not to apply the Wright's conviction for criminal contempt, the district court chose not to apply more than 60 years of precedent. Because of that reason, we're asking that the court remand this case for resentencing. The reason that it's appropriate for resentencing is because Mr. Wright was sentenced to 30 months when we suggest that the maximum that he could has been a unique class of crime, a crime that is neither a petty offense or a serious offense. And what that has resulted in is controversy over the years over whether the right to jury determination apply. But what happened during that sort of insecurity with the court recognized that contempt was a very broad and unique offense. So the other offenses that the government has pointed to in terms of how the court should have made a determination of what the maximum possible penalty was for section 401 do not apply to this case. I understand them to be making a liberal reading, a plain meaning reading of it. If you read the language about class A and you're trying to get this down to class C, it literally would encompass this crime because there isn't a statutory definition of a maximum sentence other than life imprisonment. Therefore, it fits quite literally within the class A language. So then the question becomes, is there any reason to read it differently? The Ninth Circuit has come up with policy reasons to read it differently, but we're not the Ninth Circuit. Well, Your Honor, but it's not just the Ninth Circuit. The Ninth Circuit didn't make this out of whole cloth. This is really an adaption of what the Supreme Court was saying about whether it was, whether 401 required jury determination or not. If we go back to 1958 when the United States, we realize that that's the first opportunity or the first time that the Supreme Court at least applied the analogous crime doctrine to section 401. And while that law may not be binding on this court now because of how that worked out in terms of the jury determination, that's where the roots of this come from. And because this is really about history in the sense that this was a very broad sort of law that the contempt power had. I mean, it could punish very severe conduct and it could punish not so severe conduct. So why isn't that taken care of in the second portion of the NN analysis, which has to do with the reasonableness of the sentence in light of what actually happened. And that is sort of the second part of this argument and the abuse of discretion analysis. And the Supreme Court certainly in Green said, we always review sentences for contempt for abuse of discretion, which is why that, or at least I chose that as the standard of I understand that the government disputes that. But even in the way that they dispute it, we see that they say this is an error of law. Well, there's longstanding precedent certainly in this circuit and probably others that suggests that an error of law is itself an abuse of discretion. And it is that measure in this case through the guidelines that determines why it's an abuse of discretion. The district court simply didn't have the authority if it were following statutory principles if the measure is a class D or C crime, which is what we suggest that it is. It's a class C or D felony. It's most analogous to committing a crime while on release. And that would make the maximum penalty that could have been imposed 24 months. And that's why we suggest that it's necessary to remand. It's not just that the court chose to sentence him to something more, even if it were to have followed the recommendation of the government, which is that it could have imposed consecutive sentences because there are two cases that he violated the conditions of release on. I suggest that that's still an abuse of discretion. And this court has, I think, adopted and applied the standard for what happens post-Booker and the reasonableness analysis. And I think that if we were to look at this court's sort of most recent precedent on this, which is United States versus Anonymous, we'd see that that reasonableness is also measured by an abuse of discretion and what is an error of as far as Mr. Wright is concerned. Given that, Your Honor, I think that some of the important points are that, yes, the Ninth Circuit has adopted policy reasons, but they're longstanding policy reasons. And not only have they chosen those policy reasons the first time, but they chose them a second time, even post-Booker, which is really what the government is applying to the analysis that should be applied to this reasonableness. And I'm at a loss to explain precisely why that is because it seems, from the law perspective, that they're absolutely required to follow the reasonableness analysis, even in the context of supervised release violations. I have nothing further and will rely on my brief. And thus, the court has more specific questions. Thank you. Thank you. Ms. McGrawley? Margaret McGrawley for the United States. In the government's view, there are two things that are at work in this case, and they arise out of two terms that are similar, somewhat confusing, but different. One of them is the term Class A felony. That is the Section 3559A. And pursuant to Section 3583A, a crime is a Class A felony if the maximum on supervised release is five years. The other term that's somewhat confusing and somewhat similar is Grade A. And that is the term that is used in the guideline. And when the discretion. And if I may just skip to the end what I think was Judge Lynch's question and walk you through the computations any way you would have sliced this. If this had been a Class B felony and a Grade B guideline case, the statutory maximum would have been three years and the guideline range would have been 18 to 24 months. But the pre-sentence report, which originally miscalculated it, has a variance based on the defendant's previous violations of supervised releases, recalcitrance, a number of factors. If, as the government maintains, this was a Class A, meaning it carried a five-year statutory maximum, and it was also a Grade A guideline case, then the statutory maximum, again, is five years. The guideline range is 46 to 57 months. And the sentence the defendant actually got is 30 months. So that is a sentence that is within the statutory maximum, both at the statutory Class A and statutory Class B. The only other But as the prosecutor pointed out to the district judge, the defendant was being violated for terms of supervised release imposed on two separate convictions. So the sentences could have been stacked. And in that event, even if each one had carried a maximum of two years, stacking them would have produced a sentence of four years. Again, the defendant got a sentence of 30 months. So in the government's view, any way these The result was both a proper sentence and a reasonable sentence. The question of whether or not contempt carries a statutory maximum of life is fully briefed in the government's brief. I would simply add, with respect to Judge Lynch's question about the Ninth Circuit, the government does not understand any of the defendant's authorities to dispute that a literal reading of the statute means that contempt carries a statutory maximum of life. What the defendant's authorities stand for the proposition is that under the circumstances of the case, it is not reasonable to impose a statutory maximum. Well, that didn't happen here. There was not a statutory maximum. The second issue is really the guideline question, and that is whether or not the defendant committed another federal crime when he committed aggravated assault with a dangerous weapon. I think that's fully covered in the government's brief. And unless the court has questions about it, I would rest on the brief and urge the court to affirm. Thank you.